Fred H. STEGEMAN and Ione E. Stegeman, Appellants,

v.

UNITED STATES of America, Appellee.

No. 22171.

United States Court of Appeals, Ninth Circuit.

April 22, 1970.

Louise Jayne (argued), Portland, Or., for Ione Stegeman.

Kenneth Kraemer (argued), Portland, Or., for Fred Stegeman.

Jack G. Collins (argued), Asst. U. S. Atty., Sidney I. Lezak (argued), U. S. Atty., Portland, Or., for appellee.

Before CHAMBERS, BARNES, HAMLEY, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, CARTER, HUFSTEDLER, WRIGHT and TRASK, Circuit Judges.

BROWNING, Circuit Judge:

The Stegemans were convicted of violations of 18 U.S.C. § 152. Count One of the indictment alleged that involuntary petitions in bankruptcy were filed against them in the United States District Court for the District of Oregon on December 15, 1960, and that, earlier the same month, in contemplation of bankruptcy proceedings, they knowingly and fraudulently transferred certain property from the District of Oregon to Canada. Count Two alleged that after the filing of the petition in bankruptcy they knowingly and fraudulently concealed within the District of Oregon certain property belonging to their bankruptcy estates.

The Stegemans do not challenge the sufficiency of the evidence. They rely instead upon specifications of error in the refusal of a requested instruction and in the admission of evidence.

I

In connection with the charge in Count Two, the Stegemans contend that it was error for the district court to refuse to instruct the jury that because the Stegemans were in Canada beyond the territorial jurisdiction of the district court from the date of the institution of the bankruptcy proceedings until the Stegemans were extradited to this country for prosecution, they had no duty to disclose their assets but only to refrain from affirmative acts of concealment within the District of Oregon. The Stegemans urge that 18 U.S.C. § 152 is not violated by a mere failure of a bankrupt to disclose, absent a duty to disclose; that the only basis for such a duty is section 7(a) (8) of the Bankruptcy Act, 11 U.S.C. § 25(a) (8), requiring a bankrupt to file a schedule of his assets; and that this section is applicable only to debtors who have been personally served within the jurisdiction of the bankruptcy court.

No prior personal service upon the Stegemans was required to compel their obedience to 18 U.S.C. § 152. "The jurisdiction of the United States over its absent citizen, so far as the binding effect of its legislation is concerned, is a jurisdiction *in personam*, as he is personally bound to take notice of the laws that are applicable to him and to obey them." Blackmer v. United States, 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932). Hence, if Congress intended 18 U.S.C. § 152 to apply to conduct outside the United States, and if the Stegemans' failure to disclose was included within the conduct prohibited, the instruction was properly refused.

It is sometimes said that Congress is presumed to intend its enactments to apply only within the geo-

graphic limits of the United States.[1] But the question is always one of statutory construction.[2] And when the nature of the offense is such that the consequence of limiting its *locus* "to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home * * * Congress has not thought it necessary to make specific provision in the law that the *locus* shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense." United States v. Bowman, 260 U.S. 94, 98, 43 S.Ct. 39, 41 (1922). "Thus, a criminal statute dealing with acts that are directly injurious to the government, and are capable of perpetration without regard to particular locality, is to be construed as applicable to citizens of the United States upon the high seas or in a foreign country though there be no express declaration to that effect." Skiriotes v. Florida, 313 U.S. 69, 73–74, 61 S.Ct. 924, 928 (1941).

■ . These general principles suggest the proper construction of 18 U.S.C. § 152. That section was enacted to serve important interests of government, not merely to protect individuals who might be harmed by the prohibited conduct. It reflects the exercise by Congress of an "all-inclusive power, through the bankruptcy grant, to enact any legislation reasonably framed and related to the subject of bankruptcies, which in turn is indissolubly linked to commerce and credit." 1 Collier on Bankruptcy 5 (14th ed. 1968).

Section 152 contains no limitation in terms of the place where the act or omission occurs, and "is capable of per-

petration without regard to * * * locality." Moreover, the adverse effect of the prohibited concealment will be precisely the same, and will, in the vast majority of cases, be felt principally within the United States, whether the debtor is within the country or outside it.

To exclude concealments by debtors outside the United States from the statute's coverage would frustrate the statute's purpose by creating an obvious and readily available means of evasion.

Consequently, we conclude that section 152 applied to the Stegemans in Canada.

■ We are also satisfied that, in the circumstances of this case, appellants' failure to reveal the existence of the assets to the trustee constituted concealment within the meaning of section 152 independently of the duty of a bankrupt to file schedules of assets under section 7(a) (8) of the Bankruptcy Act. 11 U. S.C. § 25(a) (8).

Section 152 is not limited in language or in purpose to providing criminal penalties for the nonperformance of particular duties which the Bankruptcy Act imposes upon various identified classes of persons. It reaches "[w]hoever knowingly and fraudulently conceals * * * any property belonging to the estate of a bankrupt." 18 U.S.C. § 152. "It attempts to cover *all the possible methods* by which a bankrupt *or any other person* may attempt to defeat the Bankruptcy Act through an effort to keep assets from being equitably distributed among creditors." 2 Collier on Bankruptcy 1151 (14th ed. 1968) (emphasis added).

■ Count Two of the indictment involved four assets, all of which originally belonged to the Stegemans. The illegal

---

1. *See, e. g.,* United States v. Pizzarusso, 388 F.2d 8, 9 (2d Cir. 1968).

2. Steele v. Bulova Watch Co., 344 U.S. 280, 282–283, 73 S.Ct. 252, 97 L.Ed. 252 (1952); Foley Bros., Inc. v. Filardo, 336 U.S. 281, 284, 69 S.Ct. 575, 93 L.Ed. 680 (1949); Skiriotes v. Florida, 313 U.S. 69, 72–74, 61 S.Ct. 924, 85 L.Ed. 1193 (1941); Blackmer v. United States, 284 U.S. 421, 437, 52 S.Ct. 252, 76 L.Ed. 375 (1932); United States v. Bowman, 260 U.S. 94, 97–98, 43 S.Ct. 39, 67 L.Ed. 149 (1922); Rocha v. United States, 288 F.2d 545, 547 (9th Cir. 1961).

conduct charged was not the mere failure of otherwise innocent debtors to schedule their assets, but rather the deliberate creation by the Stegemans of fictitious title to the assets in third persons and the willful perpetuation of those false titles until the assets were discovered by the trustee, or, in one instance, until the asset was removed from Oregon.[3]

■ The deliberate maintenance of the feigned ownerships after adjudication effectively concealed the assets from the trustee and creditors. Prohibition of such conduct is readily encompassed within both the language and purpose of section 152.[4]

3. The court's generalized instructions that failure to disclose the whereabouts of the assets could in itself constitute concealment are to be read in this factual context.

4. Even if appellants' silence were significant under § 152 only if it violated the duty imposed by § 7(a) (8) of the Bankruptcy Act, 11 U.S.C. § 25(a) (8), the existence of which, in turn, depended upon the acquisition by the bankruptcy court of personal jurisdiction over the bankrupt, appellants might nevertheless be guilty of the offense.

Section 18(a) of the Act, 11 U.S.C. § 41(a), provides for service of an involuntary petition by publication "in the same manner as provided by law for notice by publication in suits to enforce a legal or equitable lien * * *" where personal service "cannot be made" within ten days. Appellants had left Oregon, and their whereabouts were unknown when the petition was filed and for more than ten days thereafter. Therefore, service was made by publication. Appellants argue, however, that the service by publication provided for in § 18(a) was not intended to give the bankruptcy court *in personam* jurisdiction over the debtor as distinguished from *in rem* jurisdiction over the estate. Prior cases have construed the quoted language of § 18(a) as referring only to the manner of service provided for in 28 U.S.C. § 1655. *See* Bauman Diamond Co. v. Hart, 192 F. 498 (5th Cir. 1911); Hills v. F. D. McKinniss Co., 188 F. 1012 (N.D.Ohio 1910). *But see* Hollywood Youths, Inc. v. Mistrot, 246 F.2d 399 (5th Cir. 1959);

II

■ The Stegemans departed for Canada prior to the commencement of the bankruptcy proceedings. Statements obtained from them in Canada by an FBI agent were admitted in evidence over their objection that they were taken without the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After an evidentiary hearing the district court found that "without any doubt * * * there was no deprivation of freedom of any action for either defendant in this case at the time of the interrogation. In other words, there was no custody situation. * * *."

In re Miller, 262 F.Supp. 295 (E.D.Ill. 1967). Moreover, there is authority for the proposition that service by publication is sufficient to impose a duty to disclose assets upon a bankrupt who has absented himself from the jurisdiction and to support a prosecution for concealment based upon a failure to discharge that duty. United States v. Kramer, 279 F.2d 754 (3d Cir. 1960). *See also* Bookey v. King, 236 F.2d 871, 877 (9th Cir. 1956).

In any event, § 18(a) and General Order 37 make the Federal Rules of Civil Procedure applicable in bankruptcy, and under Rule 4(e) *in personam* jurisdiction may be obtained by proceeding in accordance with the statutes of the state in which the district court is held. 2 Moore's Federal Practice § 4.45 (2d ed. 1967). It would appear that Oregon Revised Statutes § 15.120(b) authorized service by publication in the circumstances of this case.

Absent knowledge of appellants' address, no other practicable means of giving notice was available. When the trustee secured appellants' address, notice of subsequent proceedings was given to appellants by mail. Consequently, appellants had actual knowledge of the proceedings and might have appeared and presented their objections had they cared to do so. Due process requirements were therefore satisfied. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See* Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

We are satisfied that the district court's finding was correct.[5] *Miranda* was therefore inapplicable.[6]

### III

The Stegemans contend that the court erred in admitting a copy of a letter

---

**5.** Without attempting a full summary, the following facts support the district court's finding that appellants' freedom was not restricted in any way.

Mrs. Stegeman was interviewed in her home during daylight hours, and a young woman, apparently her daughter, was present. A corporal of the Royal Canadian Mounted Police in civilian clothes accompanied the FBI agent, but the Canadian officer did not participate in the interview. The FBI agent informed Mrs. Stegeman that he wanted to interview her and give her an opportunity to make a full and complete disclosure regarding possible violations of the National Bankruptcy Act by herself and her husband. He warned her that she did not have to furnish any information, that any information she did furnish could be used against her in a court of law, that any statements she made would have to be voluntary, and that she could stop the interview at any time she desired. She was also told that before furnishing any information she had a right to consult an attorney. Several times in the course of the interview Mrs. Stegeman said she could not understand the reason for the FBI agent's asking particular questions because she had already been interviewed on these matters by others in connection with the Oregon bankruptcy proceedings. The FBI agent told her that the Bureau conducted its own interviews in cases it investigated and that he was there to conduct such an interview if she wanted to talk with him, but that she did not have to do so. In each instance she said, in substance, "Well, no. Go ahead and ask your questions." Eventually Mrs. Stegeman concluded the interview by stating she did not care to furnish any further information. The questioning stopped, and the two men departed. No criminal proceedings were then pending. There were no promises or threats, and Mrs. Stegeman was not taken into custody.

On appeal, it is argued for the first time that since 11 U.S.C. § 25(a)(1) precluded the use of Mrs. Stegeman's deposition taken earlier pursuant to an order of the bankruptcy court, she may have understood her answers given in the FBI interview to have had the same status; whereas, in fact, she was incriminating herself for the first time. It is uncontradicted that Mrs. Stegeman was advised that the statements which she made in the course of the interview *could* be used against her. Although her lack of awareness of the degree to which she was prejudicing herself may emphasize her need for the assistance of counsel, it does not, under present law, affect the admissibility of her statement.

About two months after Mrs. Stegeman was questioned, Mr. Stegeman, who had been informed by his wife about her interview, was contacted at work by an officer of the Royal Canadian Mounted Police. He was asked if he would be willing to come to the local RCMP office after work for an interview with an FBI agent. Upon finishing work, Mr. Stegeman drove to the RCMP office in his own jeep. He and the FBI agent talked in an open room assigned to them for that purpose. No other persons participated, although RCMP officers were occasionally about the room on other business. The FBI agent explained his purpose to Mr. Stegeman in the same terms as those used in interviewing his wife. He told Mr. Stegeman that he had asked him to come to the RCMP office only because it was a convenient place to hold the interview. Mr. Stegeman was warned that he need not make any statements, that any information he furnished could be used against him in court, and that he had a right to consult an attorney before furnishing any information. The FBI agent also told Mr. Stegeman that the interview must be completely voluntary, that it might be terminated whenever he desired, and that he was at liberty to leave at any time. In response to the agent's admonitions, Mr. Stegeman indicated his willingness to furnish the FBI agent any information he had. The interview continued for an hour and a half or two hours. Mr. Stegeman then left the RCMP office. No criminal proceedings were pending. There were no promises or threats, and Mr. Stegeman was not taken into custody.

**6.** Mathis v. United States, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); Miranda v. Arizona, 384 U.S. 436, 444, 477, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Clark v. United States, 400 F.2d 83 (9th Cir. 1968); United States v. Squeri, 398 F.2d 785 (2d Cir. 1968); Morgan v. United States, 377 F.2d 507, 508 (1st Cir. 1967); Nason v. Immigration & Naturalization Service, 370 F.2d 865, 868 (2d Cir. 1967); United States v. Bottone, 365 F.2d 389, 395 (2d Cir. 1966).

written to them by their attorney, Lawrence Morley, over their objection based upon the attorney-client privilege. On this issue the court is equally divided.

The convictions are affirmed.