700 F.2d 1279
 10 Bankr.Ct.Dec. 414, Bankr. L. Rep. P 69,108
 COMMODITY FUTURES TRADING COMMISSION, Plaintiff,
v.
CO PETRO MARKETING GROUP, INC., a California corporation, et
al., Defendants.
LOO, MERIDETH & McMILLAN, Claimant/Appellant,
v.
Irving SULMEYER, Receiver/Appellee.
 No. 81-5862.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 4, 1983.
Decided March 11, 1983.
 
 M. Sean McMillan, Loo, Merideth & McMillan, Los Angeles, Cal., for claimant/appellant.
 David M. Higgins, Overton, Lyman & Prince, Los Angeles, Cal., for receiver/appellee.
 Appeal from the United States District Court for the Central District of California.
 Before SKOPIL, NELSON, and CANBY, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Appellant Loo, Merideth & McMillan appeals from a district court order declaring that appellant had violated a permanent injunction issued by the district court against any transfer of the assets of Co Petro Marketing Group, Inc. ("Co Petro"). The district court ordered appellant to return $60,000 it had received from Co Petro. Appellant contends (1) that the district court did not have jurisdiction to issue the order, (2) that the district court proceeding was automatically stayed under section 362 of the Bankruptcy Reform Act of 1978, 11 U.S.C. Sec. 362 (Supp. IV 1980), and (3) that receipt and deposit of the $60,000 by appellant did not violate the permanent injunction.[1] We affirm the district court's order.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Appellant Loo, Merideth & McMillan, a law firm, represented defendants Co Petro and Michael Bradley Krivacek in the primary action below. In that action, the Commodities Futures Trading Commission ("CFTC") charged defendants with violating sections 4 and 4h of the Commodity Exchange Act, 7 U.S.C. Secs. 6, 6h (1976). The CFTC sought to enjoin defendants from selling gasoline through the use of contracts alleged to be futures contracts. The CFTC also sought various forms of ancillary relief, including the appointment of a receiver for the assets of Co Petro.
 
 
 3
 The district court entered a temporary restraining order on March 21, 1980. The trial on the merits was consolidated with the preliminary injunction hearing and was advanced to April 2, 1980.
 
 
 4
 On May 7, 1980, the district court issued its memorandum of decision and order. The court found that the contracts used by Co Petro in selling gasoline were futures contracts and that the use of these contracts violated the Commodity Exchange Act. Commodity Futures Trading Commission v. Co Petro Marketing Group, Inc., 502 F.Supp. 806 (C.D.Cal.1980), aff'd, 680 F.2d 566 (9th Cir.1982). The district court permanently enjoined the defendants from dealing in commodity futures contracts relating to petroleum products. The district court also granted various forms of ancillary relief requested by the CFTC, including the following:
 
 
 5
 (1) A receiver was appointed to oversee the identification, preservation, management and control of the assets of Co Petro;
 
 
 6
 (2) Defendants were enjoined from utilizing, diverting, transferring or dealing in any manner whatsoever with the assets of Co Petro and Goldstein; and
 
 
 7
 (3) Defendants were ordered to disgorge all payments received by them from the unlawful activities. 502 F.Supp. at 820-21.
 
 
 8
 The district court order was signed and filed on May 7 and served by mail on counsel for the parties. Appellant was advised on the afternoon of May 7 that the district court ruling was adverse to Co Petro and that a receiver had been appointed. Although appellant contends that it was not informed as to the precise terms of the order, appellant was aware of the relief sought by the CFTC in its complaint.
 
 
 9
 During the morning of May 8, 1980, appellant received a cashier's check for $60,000 knowing that the remitter of the check was Co Petro. Appellant deposited the check on May 8 and applied $51,791.31 to the outstanding Co Petro bill and the rest to its trust account on behalf of Co Petro to cover services to be rendered in the future. Appellant received its copy of the district court's order later that same day, after it had deposited the check. The district court's judgment was entered onto the district court docket sometime on May 8, 1980.
 
 
 10
 On May 9, representatives of Loo, Merideth & McMillan met with the original receiver for the Co Petro assets. Also present was a representative of another law firm, Ball, Hunt, Hart, Brown & Baerwitz ("Ball, Hunt"), which had also received a $60,000 cashier's check. Appellant advised the receiver that it had received and deposited the check and that part of the funds would be applied toward future services to be rendered by appellant on behalf of Co Petro. The receiver did not request return of the $60,000 or object to the rendering of future legal services by appellant. Also on May 9, at a hearing on the motion to stay the order pending appeal, appellant informed the district court judge that it had received the $60,000 check.
 
 
 11
 On May 19, 1980, Co Petro filed a voluntary petition in bankruptcy pursuant to Chapter 11. On May 30, 1980, the receiver was appointed trustee of the bankruptcy estate. The bankruptcy action is still pending.
 
 
 12
 On June 12, 1980, counsel for the receiver requested appellant to return the $60,000. Appellant refused.
 
 
 13
 On July 27, 1981, Sulmeyer, the successor receiver, filed an application with the district court seeking return of the funds held by appellant and those held by Ball, Hunt. Ball, Hunt returned the funds in its possession without prejudice to its right to seek compensation from the bankruptcy court. At a hearing held on August 31, 1981, the district court ordered appellant to return the $60,000 in its possession plus interest at the rate of 7% per annum.
 
 ISSUES PRESENTED
 
 14
 I. Did the district court have jurisdiction to order Loo, Merideth & McMillan to return the $60,000?
 
 
 15
 II. Does the district court's order come within the "police or regulatory exception" to the automatic stay provisions of the Bankruptcy Reform Act of 1978?
 
 
 16
 III. Did Loo, Merideth & McMillan violate the district court's permanent injunction when it deposited the $60,000 check?
 
 STANDARD OF REVIEW
 
 17
 All three issues on this appeal involve questions of law; therefore, this court's standard of review is de novo. Miller v. United States, 587 F.2d 991, 994 (9th Cir.1978).
 
 DISCUSSION
 
 18
 I. Did the district court have jurisdiction to order Loo, Merideth & McMillan to return the $60,000?
 
 
 19
 In its memorandum decision and order, the district court explicitly retained jurisdiction to implement and carry out the terms of its order. 502 F.Supp. at 821. Nevertheless, appellant contends that under section 1471(e) of the Bankruptcy Reform Act of 1978 ("the Act") the district court was divested of jurisdiction by the filing of the bankruptcy petition. Section 1471(e) provides that "[t]he bankruptcy court in which a case under Title 11 is commenced shall have exclusive jurisdiction of all the property, wherever located, of the debtor, as of the commencement of such case." Bankruptcy Reform Act of 1978 Sec. 241(e), 28 U.S.C. Sec. 1471(e) (Supp. IV 1980).[2]
 
 
 20
 The Supreme Court has declared section 1471 of the Act unconstitutional because the broad grant of jurisdiction to bankruptcy judges contained therein violates article III of the Constitution. Northern Pipeline Construction Co. v. Marathon Pipeline Co., --- U.S. ----, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Supreme Court specified, however, that its decision in Northern Pipeline is not to be applied retroactively because the decision represented an "unprecedented question of interpretation of Art. III" and "retroactive application ... would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts." 102 S.Ct. at 2880. Because the district court's order and the filing of the bankruptcy petition in this case occurred before the effective date of the Northern Pipeline decision, we must address the issue of interpretation of section 1471(e) presented by this case. In doing so, however, we recognize the limited precedential value of our decision.
 
 
 21
 We hold that the district court in this case did have jurisdiction to enforce the terms of its preliminary injunction by ordering appellant to return the $60,000 to the receiver. Although section 1471(e) provides that the bankruptcy court shall have exclusive jurisdiction of all property, wherever located, of the debtor, the exceptions to the automatic stay set forth in section 362 and the provisions of section 1471(b) both recognize that under certain circumstances courts other than the bankruptcy court have jurisdiction to hear related proceedings involving the debtor. SEC v. First Financial Group of Texas, 645 F.2d 429, 439 (5th Cir.1981) (holding that section 1471(e) does not deprive district court of jurisdiction to appoint a temporary receiver in an enforcement action brought by the SEC).
 
 
 22
 Section 1471(e) was intended to establish the broad in rem jurisdiction of the bankruptcy court over all property of the debtor, wherever located. Under the old Bankruptcy Act of 1898, as amended, the jurisdiction of the bankruptcy court was in rem and turned upon the property's being in the possession of the debtor or upon a third party's consenting to jurisdiction. 1 Collier on Bankruptcy Sec. 3.01, at 3-55 (15th ed. 1982). Section 1471(e) makes explicit that under the new Act, all property of the debtor, wherever located, is in custodia legis of the bankruptcy court. Id.
 
 
 23
 The essential purpose is, basically, to render the authority and control of the bankruptcy court paramount and all-embracing to the extent required to achieve the ends contemplated by the new legislation and to exclude any interference by the acts of others or by proceedings before other courts where such activities or judicial proceedings would in some way frustrate the jurisdiction of the bankruptcy courts.
 
 
 24
 1 Collier Bankruptcy Manual Sec. 3.01, at 3-24 (3d ed. 1982).
 
 
 25
 Allowing the district court to enforce its preliminary injunction by directing return of the $60,000 to the receiver would in no way frustrate the jurisdiction of the bankruptcy court. Section 543 of the Act protects the bankruptcy court's exclusive jurisdiction over property of the estate by requiring the receiver to preserve it and deliver it to the bankruptcy trustee. 11 U.S.C. Sec. 543 (Supp. IV 1980); accord SEC v. First Financial Group, 645 F.2d at 439. Therefore, section 1471(e) does not divest the district court in this case of jurisdiction to issue an order to aid the receiver in collecting and preserving property of the estate.
 
 
 26
 Moreover, the exception to the automatic stay set forth in section 362(b)(5) recognizes that the district court retains jurisdiction to enforce an injunction obtained in an action or proceeding by a governmental unit to enforce its police or regulatory power. As discussed in section II, infra, the enforcement of the district court's injunction in this case fits squarely within the "police or regulatory exception" to the automatic stay set forth in section 362(b)(5). The district court therefore had jurisdiction to enforce its preliminary injunction by ordering Loo, Merideth & McMillan to return the $60,000 to the receiver.
 
 
 27
 II. Does the district court's order directing return of the $60,000 come within the "police or regulatory exception" to the automatic stay?
 
 
 28
 Appellant contends that the district court's order is void because it does not fall within the provisions of section 362(b)(5) setting forth the "police or regulatory exception" to the automatic stay. 11 U.S.C. Sec. 362(b)(5) (Supp. IV 1980). Appellant's argument is not convincing. An examination of the underlying purposes and the legislative history of section 362(b)(5) supports the district court's conclusion that the "police or regulatory exception" applies in this case.
 
 
 29
 Under section 362(a)(2) of the Act, the filing of a bankruptcy petition automatically operates as a stay against "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. Sec. 362(a)(2) (Supp. IV 1980). Thus, the district court's order in this case was automatically stayed under section 362(a)(2) unless an exception to the automatic stay applies.
 
 
 30
 Section 362(b)(5) provides that the filing of the bankruptcy petition does not automatically operate as a stay:
 
 
 31
 under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.
 
 
 32
 11 U.S.C. Sec. 362(b)(5) (Supp. IV 1980). The policy behind this "police or regulatory exception" to the automatic stay is to prevent the bankruptcy court from becoming a haven for wrongdoers. 2 Collier on Bankruptcy Sec. 362.05, at 362-40 (15th ed. 1982).
 
 
 33
 Section 362(b)(5) "extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment." H.R.Rep. No. 595, 95th Cong., 2d Sess. 343 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5963, 6299. Allowing "[e]nforcement of a monetary judgment would give the governmental unit an unfair advantage over other creditors, and would effectively subvert the scheme of priorities set forth in section 507" of the Act. 2 Collier on Bankruptcy Sec. 362.05, at 362-40 (15th ed. 1982).
 
 
 34
 The district court's order in this case was entered to enforce an injunction obtained in an action by the CFTC to enforce its regulatory power to stop violations of the commodities trading laws. Congress intended that this kind of regulatory action be allowed to proceed. The legislative history states that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." H.R.Rep. No. 595, 95th Cong., 2d Sess. 343 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News 5963, 6299.
 
 
 35
 The district court's order in this case is not the enforcement of a money judgment; rather, it is the enforcement of the district court's injunction against transferring or dealing in Co Petro assets. Furthermore, the district court's order does not give the CFTC or the defrauded investors preference over other creditors. As previously discussed, the receiver must turn over all assets of Co Petro, including the $60,000, to the bankruptcy trustee for distribution with the rest of the estate. 11 U.S.C. Sec. 543 (Supp. IV 1980). Therefore, the district court's order in this case comes within the "police or regulatory exception" to the automatic stay. Accord SEC v. First Financial Group, 645 F.2d at 437-38 (holding that a continuing civil enforcement action by the SEC and the enforcement of injunctive relief therein comes within the "police or regulatory exception" to the automatic stay).
 
 
 36
 Appellant cites Missouri v. Bankruptcy Court, 647 F.2d 768 (8th Cir.1981), cert. denied 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982), as authority for its argument that the "police or regulatory exception" to the automatic stay does not apply to the instant case. In that case, the Eighth Circuit stated that "the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." Id. at 776. Consequently, the Eighth Circuit held that a suit to enforce Missouri's grain laws did not fall under the "police or regulatory exception" because "although regulatory in nature, [they] primarily relate to the protection of the pecuniary interest in the debtor's property and not to matters of public safety and health." Id.
 
 
 37
 Missouri v. Bankruptcy Court is distinguishable from the instant case, however. In Missouri, the regulatory law in question was a state law empowering the state to operate and liquidate insolvent grain warehouses. If the state court suit under that law had been allowed to proceed, it would have conflicted with the administration of the debtors' estate in the bankruptcy court. In this case, allowing the district court to enforce its injunction against transferring Co Petro assets does not conflict with the administration of the estate in the bankruptcy court; in fact, it will aid in that administration.
 
 
 38
 For the foregoing reasons, we hold that the district court's order directing return of the $60,000 comes within the "police or regulatory exception" to the automatic stay set forth in section 362(b)(5). The district court's order enforced an injunction obtained by the CFTC in an action to enforce its police or regulatory power.
 
 
 39
 III. Did appellant violate the permanent injunction by depositing the $60,000 check?
 
 
 40
 Appellant contends that it did not violate the permanent injunction against transfer of Co Petro assets when it deposited the $60,000 cashier's check on May 8, because under Fed.R.Civ.P. 58 the district court's judgment was not effective until entered in the district court docket, also occurred on May 8. Appellant's argument is without merit.
 
 
 41
 The purpose of Fed.R.Civ.P. 58 is to provide a bright-line rule so that litigants will know the terms of the judgment and when it was entered because the times for filing a notice of appeal, for making post-trial motions, and for issuing execution all run from the date of entry of the judgment. C. Wright & A. Miller, Federal Practice and Procedure Sec. 2781, at 6 (1973); see also Nichols-Morris Corp. v. Morris, 272 F.2d 586, 588 (2d Cir.1959) ("the purpose of the docket entry requirement is primarily to indicate to the parties that an act dispositive of the case has been taken and to set a definite time ... to appeal").
 
 
 42
 In this case, entry of the judgment and the deposit of the check occurred on the same day--May 8. Appellant attempts to use Rule 58 to argue that it did not violate the permanent injunction by depositing the check because the receiver cannot prove that the judgment was entered before the check was deposited. However, the purposes of Rule 58 would not be served by allowing appellant to succeed with such an overly technical argument. The district court's memorandum decision and order was signed and filed on May 7. Appellant admits that it was informed on May 7 that the district court's decision was adverse to Co Petro and that a receiver had been appointed. Appellant was aware that the CFTC had sought an injunction against any transfer of Co Petro assets. As an officer of the court, appellant was under a duty to inquire as to the exact terms of the district court's decision before depositing the check. Consequently, we agree with the district court that Loo, Merideth & McMillan violated the permanent injunction against transfer of Co Petro assets when it deposited the check.
 
 CONCLUSION
 
 43
 Even after the filing of the bankruptcy petition, the district court in this case had jurisdiction to enforce its preliminary injunction against transfer of Co Petro assets by ordering appellant to return the $60,000 to the receiver. The district court's order was not automatically stayed under section 362(a)(2) of the Act. It was entered to enforce an injunction obtained by the CFTC in an action to enforce police and regulatory powers and therefore the order was excepted from the automatic stay under the "police or regulatory exception" set forth in section 362(b)(5) of the Act. Appellant violated the district court's permanent injunction when it deposited the $60,000. We therefore affirm the district court's order.
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Appellant also argues that the district court and the successor receiver are estopped from challenging that portion of the $60,000 which was applied to services rendered on behalf of Co Petro after the check was deposited. The facts of this case do not meet the test for estoppel set forth in United States v. Wharton, 514 F.2d 406, 412 (9th Cir.1975). On June 12, 1980, counsel for the receiver requested appellant to return the $60,000. Appellant refused. Although the successor receiver did not file the application with the district court seeking return of the funds until July 27, 1981, neither the district court judge nor the receiver intended that appellant should rely on his conduct in rendering legal services on behalf of Co Petro, nor did they act so that appellant had a right to believe that they so intended. See id. Appellant was aware at all times that the receiver and successor receiver sought to enforce the district court's preliminary injunction. Appellant was therefore not ignorant of the true facts. See id. Consequently, appellant's equitable estoppel argument must fail
 
 
 [2]
 Section 1471 of the Act provides as follows:
 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
 (d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.
 (e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.
 Bankruptcy Reform Act of 1978 Sec. 241, 28 U.S.C. Sec. 1471 (Supp. IV 1980).