**In re William Neil SIMON, Debtor.**

**HONG KONG AND SHANGHAI BANK-ING CORPORATION, LIMITED,** Plaintiff–Appellant,

v.

**William Neil SIMON, Defendant–Appellee.**

No. 96–16859.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1998.

Decided Aug. 27, 1998.

Howard J. Weg, Orrick, Herrington & Sutcliffe, Los Angeles, CA, for plaintiff-appellant.

Michael D. Cooper, Wendel, Rosen, Black & Dean, Oakland, CA, for defendant-appellee.

Before: HALL and THOMAS, Circuit Judges, and WHALEY,[1] District Judge.

1. Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

Opinion by Judge THOMAS; Partial Concurrence and Partial Dissent by Judge HALL.

THOMAS, Circuit Judge:

This appeal concerns whether a foreign creditor is subject to bankruptcy court sanctions for pursuing foreign collection of a debt discharged in a domestic bankruptcy in which the foreign creditor participated. We conclude that a bankruptcy court may sanction the foreign creditor for violating a court injunction, and affirm the district and bankruptcy courts.

## I

The money trail which forms the basis for this dispute began when Hong Kong and Shanghai Banking Corp., Ltd. ("Hong Kong–Shanghai") extended a loan ("Loan") for over $24 million to Odyssey International Holdings, Ltd. ("Odyssey"). Hong Kong–Shanghai is an international banking company incorporated in Hong Kong, which has offices in San Francisco and New York, and frequently does business in the United States. Odyssey is an international company incorporated in the British Virgin Islands, and maintaining offices in Hong Kong. William Neil Simon ("Simon"), Odyssey's major shareholder, personally guaranteed the Loan. Paragraph 15 of Simon's guarantee provides:

This guarantee and all rights, obligations and liabilities arising hereunder shall be construed and determined under and may be enforced in accordance with the laws of Hong Kong. I hereby agree that the Courts in Hong Kong shall have jurisdiction over all disputes arising under the guarantee and irrevocably appoint Denton Hall Burgin & Warrens of 1001 Hutchinson House, Hong Kong to be my agent for the purpose of accepting service of process hereunder.

When he executed the guarantee, Simon lived in and operated his company from Hong Kong. Under the guarantee agreement, Simon was to satisfy the Loan in full within one year. Instead, facing personal debts of over $200 million, he traveled to the United States and filed a personal bankruptcy under Chapter 7 of the United States Bankruptcy Code.

In his bankruptcy schedules, Simon listed the guarantee to Hong Kong–Shanghai on account of the Loan as an obligation or liability. Hong Kong–Shanghai filed a proof of claim in the bankruptcy court in the amount of more than $37 million, which accounted for its share in a separate, $200 million syndicate bank loan. Hong Kong–Shanghai did not file a proof of claim for Simon's guarantee of the Loan, nor did it object to the discharge of his debts. The bankruptcy court entered an order granting Simon a discharge of all debts on January 29, 1995. As part of its order, the bankruptcy court issued the following injunction:

All creditors whose debts are discharged by this order ... are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.

This injunction was issued pursuant to 11 U.S.C. § 524(a)(2), which provides:

(a) A discharge in a case under this title—

....

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived....

On February 6, 1995, Hong Kong–Shanghai filed a "Complaint for Declaratory Judgment Regarding the Debtor's Discharge" in bankruptcy court. Essentially, Hong Kong–Shanghai sought a declaratory judgment pursuant to 28 U.S.C. § 2201(a) from the bankruptcy court that, while Simon's discharge and the injunction against Hong Kong–Shanghai were effective within the United States, the discharge and injunction were not enforceable outside the United States. Hong Kong–Shanghai requested the bankruptcy court to issue an order containing any one of three findings: (1) that the discharge did not apply to enjoin Hong Kong–Shanghai from enforcing the Simon guarantee in Hong Kong; (2) that if the discharge so provided, it be modified to permit prosecution of the guarantee in Hong Kong; or (3) if Hong Kong–Shanghai chose to commence collection

proceedings in Hong Kong, it would not be subject to sanctions in the United States.

Following a hearing, the bankruptcy court granted Simon's motion to dismiss for failure to state a claim upon which relief may be granted. The bankruptcy court noted that, although the discharge injunction was not directly enforceable in Hong Kong, it was enforceable in United States district court via the imposition of sanctions against Hong Kong–Shanghai followed by appropriate collection proceedings against Hong Kong–Shanghai's property located in the United States. Moreover, the bankruptcy court found that such enforcement did not contemplate the extraterritorial application of a United States statute. Finally, the court refused to modify the discharge injunction, holding that there was no legal basis for modifying an injunction where it was appropriate and fully supported by bankruptcy law.

Hong Kong–Shanghai appealed the bankruptcy court's order to the United States District Court for the Northern District of California. The district court issued a ruling affirming the bankruptcy court's conclusion that the injunction was not an extraterritorial application of a United States statute. The district court concluded that: (1) the Bankruptcy Code conferred *in rem* jurisdiction to the court over all the property making up the debtor's estate, thus "it cannot be said that enjoining actions, wherever they may be instituted, so as to preserve the court's exclusive *in rem* jurisdiction is an extraterritorial application of the Court's equitable powers;" and (2) because Hong Kong–Shanghai had submitted to the equity jurisdiction of the bankruptcy court by participating in the bankruptcy, the court was not acting extraterritorially in issuing the injunction. Hong Kong–Shanghai appeals the district court's order, primarily arguing that the section 524 discharge injunction constitutes an improper extraterritorial application of a statute.

## II

■ Congress has the unquestioned authority to enforce its laws beyond the territorial boundaries of the United States. *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("*Aramco*"). Whether Congress has exercised that authority in a particular case is a matter of statutory construction. *Stegeman v. United States*, 425 F.2d 984, 986 (9th Cir.1970)(en banc). In construing a statute to ascertain Congress' territorial intent, we begin with the presumption that "the legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Foley Bros. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949). With that presumption in mind, we analyze intent by first examining the language of the act for indications of intent regarding extraterritorial application. *Aramco*, 499 U.S. at 248, 111 S.Ct. 1227. In addition to the plain statutory words, intent may be discerned with reference to similarly-phrased legislation, *id.* at 250–51, 111 S.Ct. 1227, or the overall statutory scheme. *Foley Bros.*, 336 U.S. at 286, 69 S.Ct. 575. If these inquires are inconclusive, examination of legislative history is appropriate. *Id.* Resort to administrative interpretations of the law may be employed if the legislative history is inconclusive. *Id.* at 286–88, 69 S.Ct. 575.

■ If Congressional intent concerning extraterritorial application cannot be divined, then courts will examine additional factors to determine whether the traditional presumption against extraterritorial application should be disregarded in a particular case. First, "the presumption is generally not applied where the failure to extend the scope of the statute to a foreign setting will result in adverse effects within the United States." *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 531 (D.C.Cir.1993) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952)). Second, the presumption against extraterritoriality is not applicable when the regulated conduct is "intended to, and results in, substantial effects within the United States" *Laker Airways, Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 925 (D.C.Cir.1984).

Applying this analysis to the instant case, the district court was entirely correct in upholding the bankruptcy court's order and giving effect to the section 524 discharge injunction.

## A

The district court properly concluded that as to actions against the bankruptcy estate, Congress clearly intended extraterritorial application of the Bankruptcy Code. The filing of a bankruptcy petition under 11 U.S.C. §§ 301, 302 or 303 creates a bankruptcy estate. 11 U.S.C. § 541(a). With certain exceptions, the estate is comprised of the debtor's legal or equitable interests in property *"wherever located and by whomever held." Id.* (emphasis supplied). The district court in which the bankruptcy case is commenced obtains exclusive *in rem* jurisdiction over all of the property in the estate. 28 U.S.C. § 1334(e); *Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.,* 700 F.2d 1279, 1282 (9th Cir.1983)(interpreting 28 U.S.C. § 1471, the statutory precursor to 28 U.S.C. § 1334(e)). The court's exercise of "custody" over the debtor's property, via its exercise of *in rem* jurisdiction, essentially creates a fiction that the property—regardless of actual location— is *legally* located within the jurisdictional boundaries of the district in which the court sits. *See Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)(noting that bankruptcy courts have "constructive possession" over estate property) (internal quotation marks and citations omitted); *Commodity Futures,* 700 F.2d at 1282 (noting that under the bankruptcy code, "all property of the debtor, wherever located, is in *custodia legis* of the bankruptcy court."). This includes property outside the territorial jurisdiction of the United States. *See Stegeman,* 425 F.2d at 986 (construing extraterritorial jurisdictional reach of prior Bankruptcy Act); *see also Underwood v. Hilliard (In re Rimsat, Ltd.),* 98 F.3d 956, 961 (7th Cir. 1996).

Given this clear expression of intent by Congress in the express language of the Bankruptcy Code, we conclude that Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate. Although Hong Kong–Shanghai concedes this point, it questions whether such an extraterritorial application may operate to enjoin a foreign proceeding. As a matter of general principle, protection of *in rem* or *quasi in rem* jurisdiction is a sufficient basis for a court to restrain another

court's proceedings. *Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). In such cases, "the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Id.* This rationale extends to foreign proceedings. *See Seattle Totems Hockey Club v. National Hockey League,* 652 F.2d 852, 855 (9th Cir.1981); *see also Gau Shan Co. v. Bankers Trust Co.,* 956 F.2d 1349, 1356 (6th Cir.1992); *China Trade & Develop. Corp., v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir. 1987).

In the bankruptcy context, the Seventh Circuit has expressly held that protection of the bankruptcy court's *in rem* jurisdiction over estate property allows an international proceeding to be enjoined pursuant to the automatic stay in 11 U.S.C. § 362. *Underwood,* 98 F.3d at 961. As Chief Judge Posner explained: "The efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located . . . ." *Id.*

As applied to the concept of *in rem* bankruptcy jurisdiction, there is no functional difference between the automatic stay imposed by 11 U.S.C. § 362 upon the commencement of a bankruptcy and the injunction prohibiting collection actions against the bankruptcy estate provided in 11 U.S.C. § 524(a)(3). Each stay operates to protect the estate and the *in rem* jurisdiction of the bankruptcy court. Accordingly, we join the Seventh Circuit's logic and hold that a bankruptcy court may validly exercise its *in rem* jurisdiction to protect estate property wherever the property is located in issuing a discharge injunction under 11 U.S.C. § 524. Thus, the district court correctly held in this case that the 11 U.S.C. § 524 discharge enjoined Hong Kong–Shanghai from commencing collection against any bankruptcy estate property regardless of its geographic location.

## B

The more difficult problem is whether a bankruptcy court may enjoin a foreign collection action against the debtor personally, or as to assets which do not form part of estate property, if the creditor was not a

party to the United States bankruptcy proceedings. However, we need not squarely address that question because Hong Kong–Shanghai fully participated in the Simon bankruptcy, thus surrendering to United States jurisdiction. Because allowing a participating creditor to disregard bankruptcy court orders would have "substantial effects within the United States," *see Laker Airways,* 731 F.2d at 925, the presumption against extraterritorial effect of a statute does not apply. Thus, the section 524 discharge injunction does not restrain the courts in Hong Kong; it enjoins the creditor. Hong Kong–Shanghai may choose to commence collection proceedings in Hong Kong against Simon, but it does so at the risk of bankruptcy court sanctions in the United States.

Hong Kong–Shanghai disputes that its submission of a proof of claim should have any effect because the proof of claim was unrelated to the Loan, or Simon's guarantee of it. In essence, Hong Kong–Shanghai is contending it was submitting itself to limited bankruptcy court jurisdiction confined to the parameters of its proof of claim. This argument misapprehends bankruptcy law and the effect of the proceedings in this case. The Bankruptcy Code does, in fact, allow for limited appearances by foreign representatives, but only under narrowly circumscribed conditions inapplicable to this case. 11 U.S.C. § 306 allows a trustee, administrator or other representative of an estate in a foreign insolvency proceeding to make limited appearance to assert rights in connection with the foreign proceeding. 2 *Collier on Bankruptcy* ¶ 306.02, p. 306–2 (15th ed.1998). A creditor asserting its own rights does not qualify as a "foreign representative" entitled to make a limited appearance. 11 U.S.C. § 101(24). Further, as the district court noted, *Langenkamp v. Culp,* 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), suggests that filing a proof of claim on any debt is sufficient to subject a creditor to the general jurisdiction of the bankruptcy court.

Hong Kong–Shanghai had a number of other opportunities to assert its position in bankruptcy court, but neglected to do so. It did not request the bankruptcy court for abstention based on the possible pendency of foreign proceedings pursuant to 11 U.S.C. § 305. No request was made by Hong Kong–Shanghai under 11 U.S.C. § 362(d) to modify or lift the automatic stay enjoining it from collection proceedings against the debtor. Hong Kong–Shanghai did not make an adequate protection request under 11 U.S.C. § 361. The debtor listed his guarantee of the Loan on his bankruptcy schedules without objection by Hong Kong–Shanghai. Hong Kong–Shanghai failed to file any objection to the discharge of Simon's debts pursuant to 11 U.S.C. § 727(c). The only action Hong Kong–Shanghai took was to assert its rights in a collateral proceeding so that it might be paid a distribution out of the bankruptcy estate.

When a creditor submits to bankruptcy court jurisdiction by filing a proof of claim in order to collect all or a portion of a debt, it assumes certain risks. For example, the creditor loses the right to a jury trial on any counter-claims filed by the debtor or the trustee. *See Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. 330. In addition, the creditor loses previously-held rights to assert "legal claims" against the debtor and his estate; bankruptcy "converts the creditor's legal claim into an equitable claim to a pro rata share of the res." *Katchen,* 382 U.S. at 336, 86 S.Ct. 467. By acceding to bankruptcy court jurisdiction so that it might recover a portion of the money it was owed, Hong Kong–Shanghai forfeited any right it had to claim that the court lacked the power to enjoin Hong Kong–Shanghai from commencing a post-bankruptcy collection proceeding against the debtor. Clearly, Hong Kong–Shanghai's participation in the bankruptcy subjected it to the court's discharge order pursuant to 11 U.S.C. § 524. A sanction for violating that order is not an improper extraterritorial application of United States laws. Having decided that the district court properly upheld the bankruptcy court order on this basis, we need not decide whether 11 U.S.C. § 524 itself applies extraterritorially in all cases, either as to non-estate assets, or the debtor's personal liability.

### III

International comity does not require us to vacate the bankruptcy court's

injunction forfending debt collection proceedings against Simon based on pre-petition debt, as Hong Kong–Shanghai alternatively suggests. Generally, the doctrine of comity stands for the proposition that a statute "ought never to be construed to violate the law of nations, if any other possible construction remains." *Murray v. The Charming Betsy*, 2 Cranch 64, 6 U.S. 64, 118, 2 L.Ed. 208 (1804). *See also* Restatement (Third) of Foreign Relations, § 403(1) (1986)(providing that states normally refrain from prescribing laws that govern activities connected with another state "when the exercise of such jurisdiction is unreasonable."). In the legal sense, comity:

> is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

Hong Kong–Shanghai argues that these principles require deference to the courts of Hong Kong, and permission for Hong Kong–Shanghai to commence collection proceedings against Simon. For this proposition, Hong Kong–Shanghai primarily relies on *Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.)*, 93 F.3d 1036, 1050 (2d Cir.1996) ("*Maxwell*"), in which the Second Circuit held, under the facts of that case, that the principles of international comity counseled against applying the Bankruptcy Code's preference avoidance provision internationally. However, the concerns which underlay the *Maxwell* court's concerns are not present in this litigation, and the philosophy of *Maxwell* is entirely consistent with the order issued in this case.

■ International comity in transnational insolvency proceedings must be considered in the context of bankruptcy theory. Hong Kong–Shanghai argues that the structure of the Bankruptcy Code supports the "territorial" theory of international bankruptcy law, sometimes affectionately known as the "grab" rule. *See* Jay Lawrence Westbrook, *The Lessons of Maxwell Communications*, 64 Fordham L.Rev. 2531, 2532 (1996). Under this philosophy, courts in each national jurisdiction are responsible for seizing and controlling assets within their geographic reach. Simon contends that the Code embraces the "universalist" philosophy which contemplates one plenary transnational proceeding completely governing the administration of assets world-wide.

■ The Bankruptcy Code does not codify either of the theories proffered by the parties. Rather, the Code provides for a flexible approach to international insolvencies dependent upon the circumstances of the particular case. If any philosophy can be attributed to the structure of the Code it is that of deference to the country where the primary insolvency proceeding is located, including the United States if the plenary proceeding is located here, and flexible cooperation in administration of assets. For example, 11 U.S.C. § 304(a) provides for the filing of proceedings in the United States which are ancillary to plenary foreign proceedings. 11 U.S.C. § 305 allows a United States bankruptcy court to dismiss or suspend a domestic bankruptcy proceeding when there is a pending foreign proceeding, and the foreign representative seeks dismissal or suspension of proceedings in the United States. A "foreign proceeding" is defined as:

> a proceeding, whether judicial or administrative, and not necessarily subject to the bankruptcy law, if any, in a foreign country in which the debtor's domicile, residence, principal place of business or principal assets were located at the commencement of the proceeding, but which is convened for the purpose of liquidation or debt adjustment by composition, extension, discharge or reorganization.

11 U.S.C. § 101(23).

On the other hand, as we have discussed, Congress extended the bankruptcy court's power over the debtor's legal and equitable interests in property "wherever located." 11 U.S.C. § 541. Additionally, subject to the usual threshold Code requirements, a foreign entity owning business property in the United States may file a plenary proceeding here. 11 U.S.C. § 109(a); *Maxwell*, 93 F.3d at 1046.

Thus, under the Bankruptcy Code, the bankruptcy court must consider the status and progress of other nations' insolvency proceedings in determining how to manage domestic bankruptcies. In most cases, the court will defer to where the "center of gravity" of multiple proceedings exists, if one can be ascertained. However, courts may also proceed jointly with a foreign court, *see Maxwell*, 93 F.3d at 1041–42, or may choose to exercise its power to the full extent of its jurisdiction in an appropriate case.

Given this general background, the *Maxwell* court's conclusion was completely logical. *Maxwell* involved an international insolvency jointly managed in the United States and Great Britain. A true conflict existed between the preference law of Great Britain and the United States which would have produced a different result depending on which law applied. Because the pre-petition transactions occurred solely in Great Britain, the *Maxwell* court appropriately exercised its discretion to defer in the interest of international comity.

By contrast, this case does not involve competing bankruptcy proceedings; indeed, there is no proceeding pending in Hong Kong. The sole, plenary insolvency proceeding was initiated in the United States without objection and with the participation of the appellant. Hong Kong–Shanghai cannot point to a single conflict which exists between Hong Kong and United States law on the issue in question. In fact, the section 524 discharge injunction does not apply to the Hong Kong courts at all, but only to the creditor who enjoyed the benefits of participating in the United States bankruptcy. Under these circumstances, international comity does not dictate a result contrary to that reached by the district and bankruptcy courts. Rather, it is consistent with the general principles of international comity which is limited to cases in which " 'there is in fact a true conflict between domestic and foreign law.' " *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(citing *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 555, 107 S.Ct. 2542, 96 L.Ed.2d 461

(1987) (Blackmun, J., concurring)). Thus, the district court properly declined to reverse the bankruptcy court's order on the basis of international comity.

## IV

The district court was entirely correct in its analysis of the bankruptcy court order. The order did not involve an improper extraterritorial application of a statute as applied to estate property because 11 U.S.C. § 541 expressly includes all of the debtor's property regardless of geographic location. The discharge injunction was validly applied to Hong Kong–Shanghai as to the debtor's non-estate property because Hong Kong–Shanghai's participation in the Simon bankruptcy subjected it to the otherwise valid orders of the bankruptcy court. International comity does not compel a contrary result because there is no conflicting proceeding in a foreign nation at issue. For these reasons, we affirm the judgment of the district court.

AFFIRMED.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and dissenting in part, and concurring in the judgment.

I concur in the majority opinion, though I write separately to express my disagreement with the majority on the issue of Congressional intent. The majority concludes that Congress clearly intended the extraterritorial application of the Bankruptcy Code as it applies to the property of the estate. The majority bases this conclusion on a single vague specification in 11 U.S.C. § 541(a) that the estate is comprised of the debtor's legal or equitable interests in property "wherever located and by whomever held." While this language may plausibly apply to property located within foreign jurisdictions, we do not simply apply statutes extraterritorially if it is plausible or even desirable to do so. We must "assume that Congress legislates against the backdrop of the presumption against extraterritoriality." *E.E.O.C. v. Arabian–American Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). As the Supreme Court has pointed out, "[i]f we were to permit possible, or even plausible, interpretations of language such as that involved here to override the presumption against extraterritorial application, there

would be little left of the presumption." *Id.* at 253, 111 S.Ct. 1227.

However, I concur in the judgment because I do not believe that extraterritoriality is implicated in this case. As the majority itself points out: "[t]he court's exercise of 'custody' over the debtor's property, via its exercise of *in rem* jurisdiction, essentially creates a fiction that the property—regardless of actual location—is *legally* located within the jurisdictional boundaries of the district in which the court sits." The majority further recognizes that this "legal fiction" applies even to property located outside the territorial jurisdiction of the United States. While the majority collapses its discussion of this "legal fiction" into its discussion of Congressional intent, these are in fact two wholly independent bases for the district court's exercise of power.

Congressional intent may be less than clear, but it is clear that bankruptcy estate property is located within the bankruptcy court's jurisdiction. *See Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.,* 700 F.2d 1279, 1282 (9th Cir.1983). I concur in the judgment for this reason.