**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: ROBERT SASSON,

*Debtor.*

ROBERT SASSON,

*Appellant,*

v.

NORMAN F. SOKOLOFF, M.D.,
individually and as Trustee for
CAMELOT MEDICAL GROUP, INC.,
PROFIT SHARING PLAN,

*Appellee.*

No. 03-16364

BAP No.
NC-02-01410-
MaMeP

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Perris, Meyers, and Marlar, Bankruptcy Judges, Presiding

Argued and Submitted
February 15, 2005—San Francisco, California

Filed August 25, 2005

Before: Sidney R. Thomas, Susan P. Graber, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Thomas

11491

**COUNSEL**

David A. Boone and Susan D. Silveira, Law Offices of David A. Boone, San Jose, California, for the appellant.

Wayne A. Silver, Sunnyvale, California, for the appellee.

**OPINION**

THOMAS, Circuit Judge:

In this appeal, we are presented with the question of whether a bankruptcy court has subject matter jurisdiction to enter a money judgment in a nondischargeability adversary proceeding where the underlying debt has been reduced to judgment in state court. We conclude that it may and affirm the decision of the Ninth Circuit Bankruptcy Appellate Panel ("BAP").

I

In 1988, Sokoloff, as trustee of Camelot Medical Group, Inc., Profit Sharing Plan, obtained a judgment against Sasson on a cross-complaint for breach of a promissory note. A California Superior Court entered judgment against Sasson for $120,000, plus accrued interest and statutory costs.

Before Sokoloff could enforce the judgment, Sasson filed a motion for reconsideration and obtained a stay of enforcement pending determination of the motion for reconsideration. The stay was granted subject to the condition that Sasson "not dissipate any assets except in the normal course of business." While the stay was in place and without informing the court of his actions, Sasson dissipated the majority of his assets through dissolution proceedings with his wife, purchase of a new property, creation of encumbrance on that property and ultimately by payment to other creditors. The court denied Sasson's motion for reconsideration, and Sokoloff recorded an abstract of judgment. At that point, however, the judgment was uncollectible.

Subsequently, Sasson filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 301, 701-784 in the Northern District of California. His bankruptcy schedule did not mention Sasson's recent transfer of assets. Sokoloff then filed a complaint seeking a determination of nondischargeability of the state court judgment under 11 U.S.C. § 523(a)(6) and a denial of discharge under 11 U.S.C. § 727(a)(2).[1] The bankruptcy court rejected the § 727(a)(2) claim, but found that Sasson's transfer of assets in violation of the state court stay constituted a willful and malicious injury under § 523(a)(6). The court entered a judgment for $148,142.46 plus costs and accruing interest. Sasson filed an appeal of this decision, but later dismissed it. Subsequently, both Sasson's bankruptcy and the adversary proceeding were closed by the bankruptcy court.

---

[1]Under 11 U.S.C. § 523(a)(6) of the Bankruptcy Code, any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" shall not be dischargeable in bankruptcy. Under 11 U.S.C. § 727(a)(2), a debtor may not obtain a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2).

Sokoloff continued to pursue collection remedies in bankruptcy court. Sokoloff filed a notice of the judgment lien and recorded an abstract of judgment. Sokoloff then obtained a Writ of Execution to the United States Marshal and instructed the Marshal to levy on Sasson's wages. Sasson filed a claim of exemption, which the court granted in part.

In 2001, Sokoloff renewed the 1991 Judgment. The bankruptcy court issued an Abstract of Judgment for $239,160.42 on July 9, 2001, which was then recorded. Subsequently, the bankruptcy court granted Sasson's ex-parte motion to reopen his Chapter 7 proceedings for sixty days. Sasson then filed a motion pursuant to Federal Rule of Civil Procedure 60(b) to vacate the 1991 money judgment and to quash the 2001 abstract of judgment. In his motion, Sasson argued that the bankruptcy court lacked subject matter jurisdiction to enter a new federal money judgment and therefore the renewal of judgment and abstract of judgment were void ab initio. The bankruptcy court denied the motion after a hearing. Sasson filed a notice of appeal, which was referred to the BAP. The BAP affirmed the bankruptcy court, holding that the bankruptcy court had jurisdiction both to enter the 1991 judgment of nondischargeability and to determine the amount of damages caused by Sasson's postjudgment conduct. Sokoloff timely appealed the BAP decision.

We review both the bankruptcy court's and the BAP's interpretation of the Bankruptcy Code de novo. *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1065 (9th Cir. 2001). We review a ruling on a motion to set aside a judgment as void de novo "because the question of the validity of a judgment is a legal one." *Export Group v. Reef Indus.*, 54 F.3d 1466, 1469 (9th Cir. 1995). We review the scope of the exercise of equitable power de novo, *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1124 (9th Cir. 2000), and the exercise of equitable power for an abuse of discretion, *id.* at 1121.

II

The bankruptcy court had jurisdiction to enter a money judgment in the adversary proceeding. We have long held that "the Bankruptcy Court has jurisdiction to enter a monetary judgment on a disputed state law claim in the course of making a determination that a debt is nondischargeable." *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1016 (9th Cir. 1997).

A

**[1]** Our holding in *Kennedy* was firmly grounded. Under the original 1898 Bankruptcy Act, Pub. L. No. 55-171, 30 Stat. 544 (repealed 1978) (as amended through date of repeal) ("1898 Bankruptcy Act"), bankruptcy courts were considered to have equitable jurisdiction to issue orders in aid of a non-dischargeability determination. *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934); *see also Pepper v. Litton*, 308 U.S. 295, 304 (1939) ("[F]or many purposes courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." (internal quotation marks omitted)).

In 1970, Congress codified the power of bankruptcy courts, in the exercise of their power to declare debts nondischargeable, to "determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof." 1898 Bankruptcy Act § 17(c)(3). When Congress enacted the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 ("Bankruptcy Code" or "Code"), Congress removed specific jurisdictional language in favor of a general broad jurisdictional grant. However, in doing so, it clearly intended to incorporate the specific pre-Code jurisdiction of the bankruptcy courts.[2] In addition, the Bankruptcy Code specifically provides that:

---

[2]The jurisdiction of bankruptcy courts under the Bankruptcy Code was to include "items that the bankruptcy courts are now able to bear [sic]

> *The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.* No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added). Thus, the bankruptcy court clearly has the power under the Bankruptcy Code to determine whether a debt is nondischargeable, to "determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof," and to "issue any order, process, or judgment that is necessary or appropriate in carrying out" the order of nondischargeability.

**[2]** In addition to continuation of the bankruptcy court's pre-Code jurisdiction and the specific grant of new powers, the Bankruptcy Code provided for the exercise of "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). A bankruptcy court's "related to" jurisdiction is very broad, "including nearly every matter directly or indirectly related to the bankruptcy." *Mann v. Alexander Dawson (In re Mann),* 907 F.2d 923, 926 n.4 (9th Cir. 1990). The bankruptcy court's "related to" jurisdiction granted by the Bankruptcy Code derives directly from the Bankruptcy

---

under [the 1898] Act § 2a," including "determination of dischargeability of debts [and] liquidation of non-dischargeable debts." H.R. Rep. No. 95-595, at 446, 49 (1977) (footnote referencing 1898 Act § 17c omitted), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6401, 6010; see also *id.* at 363 (noting that "the comprehensive grant of jurisdiction prescribed in proposed [statute] . . . is adequate to cover the full jurisdiction that the bankruptcy courts have today over dischargeability and related issues under Bankruptcy Act § 17c"), *reprinted in* 1978 U.S.C.C.A.N. at 6319; S. Rep. No. 95-989, at 77 (1978) (same), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5863.

Clause, which grants Congress the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., art. 1, § 8. Congress expanded the Bankruptcy Court's Article I jurisdiction by granting federal district courts with "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Thus, at present, the bankruptcy court's "related to" jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 "over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir. 2005); *Sec. Farms v. Int'l Bhd. of Teamster*s, 124 F.3d 999, 1008 n.5 (9th Cir. 1997).

**[3]** Even the discharge of a debtor does not automatically deprive the federal courts of jurisdiction over a claim "related to" the bankruptcy. *See Kieslich v. United States (In re Kieslich)*, 258 F.3d 968, 971 (9th Cir. 2001). Indeed, we have held that a bankruptcy courts's "related to" jurisdiction includes post-confirmation jurisdiction over state court actions such as breach of contract, breach of convenant of good faith and fair dealing, and fraud when those claims have a "close nexus" to the bankruptcy proceeding. *In re Pegasus Gold Corp.*, 394 F.3d at 1194; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 309 (1995). We have also held that bankruptcy courts have post-discharge jurisdiction to enjoin collection actions, even if those actions occur in another country. *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998).

In addition, bankruptcy courts retain their traditional equitable powers under the Bankruptcy Code. *Johnson v. Home State Bank*, 501 U.S. 78, 88 (1991) (per curiam) ("[T]he bankruptcy court retains its broad equitable power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code.") (quotation marks omit-

ted)). As the Supreme Court has instructed, when a creditor files a claim in bankruptcy, "the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989)). The bankruptcy court's equitable power is not unfettered; it must be exercised to carry out the provisions of the Bankruptcy Code. *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1174 (9th Cir. 2003). However, we have recognized that "a bankruptcy court is a court of equity and should invoke equitable principles and doctrines, refusing to do so only where their application would be 'inconsistent' with the Bankruptcy Code." *Beaty v. Selinger (In re Beaty)*, 306 F.3d 914, 922 (9th Cir. 2002) (citing *In re Myrvang*, 232 F.3d at 1124).

**[4]** The Bankruptcy Code "grants exclusive jurisdiction to the bankruptcy courts to determine dischargeability." *Renfrow v. Draper*, 232 F.3d 688, 693 (9th Cir. 2000) (citing 11 U.S.C. § 523(a)(15)). As we reasoned in *Kennedy*:

> "If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt."

*Kennedy*, 108 F.3d at 1017-18 (quoting *Snyder v. Devitt (In re Devitt)*, 126 B.R. 212, 215 (Bankr. D. Md. 1991)). Our sister circuits have reached similar conclusions. *Porges v. Grun-*

*tal & Co. (In re Porges)*, 44 F.3d 159, 165 (2d Cir. 1995); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965-66 (6th Cir. 1993); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1507-08 (7th Cir. 1991). Given the text and history of the Bankruptcy Code and the bankruptcy court's inherent equitable powers, it is clear, as we held in *Kennedy*, that bankruptcy courts have jurisdiction and power to enter money judgments in adjudicating nondischargeability adversary proceedings.

B

**[5]** Sasson attempts to distinguish *Kennedy* from this case because *Kennedy* involved an unliquidated claim. *Kennedy* made no such distinction, and there is no principled jurisdictional distinction to be drawn. There is nothing in the text of the Bankruptcy Code or its history that contains a jurisdictional exception for debts that have been liquidated to judgment. To hold otherwise would be to deprive the bankruptcy court of its exclusive jurisdiction over bankruptcy discharge pursuant to 11 U.S.C. § 523(a). As the Supreme Court has noted, "[s]ince 1970 [ ], the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner*, 498 U.S. 279, 284 (1991) (citing *Brown v. Felsen*, 442 U.S. 127, 129-30 (1979)). The Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Notably, it does not contain an additional clause stating "except when the debt has been liquidated to judgment."

The debtor invoked bankruptcy court subject matter and *in personam* jurisdiction by filing a voluntary petition in bankruptcy. With the commencement of the case, the bankruptcy court acquired exclusive *in rem* jurisdiction over all the debtor's legal or equitable interests in property wherever located and by whomever held. 28 U.S.C. § 1334(e); *Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc.*, 700

F.2d 1279, 1282 (9th Cir. 1983). By filing a proof of claim, the creditor in this case became subject to the bankruptcy court's *in personam* jurisdiction, and the limitations of the Bankruptcy Code. *In re Simon*, 153 F.3d at 997. The parties were clearly subject to both subject matter and *in personam* jurisdiction of the bankruptcy court.

[6] The fact that a debt has been previously liquidated to judgment does not deprive the bankruptcy court of jurisdiction, nor of any of its statutory and equitable power. It may, as we shall discuss in Part II.D, have an effect on the form of relief that the bankruptcy court grants in nondischargeability proceedings. However, it does not alter the *Kennedy* jurisdictional analysis. The existence of a state court judgment does not deprive the bankruptcy court of the statutory power to enter a new judgment of nondischargeability.

C

[7] Sasson argues that the *Rooker-Feldman* doctrine[3] alters this jurisdictional analysis. However, the *Rooker-Feldman* doctrine did not deprive the bankruptcy court of jurisdiction to enter the money judgment in the nondischargeability adversary proceeding. The *Rooker-Feldman* doctrine is based on the statutory proposition that federal district courts are courts of original, not appellate, jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. Therefore, federal district courts have "no authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986). Only the Supreme Court has original

---

[3]The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. 263 U.S. at 415-16. *Feldman* held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. 460 U.S. at 486-87.

jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a). As the Supreme Court has recently explained, the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 125 S.Ct. 1517, 1521-22 (2005).

**[8]** Application of the *Rooker-Feldman* doctrine in bankruptcy is limited by the separate jurisdictional statutes that govern federal bankruptcy law. *Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc). The *Rooker-Feldman* doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case. *Id.* at 1081. In the exercise of federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings, *see, e.g.,* 11 U.S.C. §§ 544, 547, 548, 549, may modify judgments, *see, e.g.,* 11 U.S.C. §§ 1129, 1325, and, of primary importance in this context, may discharge them, *see, e.g.,* 11 U.S.C. §§ 727, 1141, 1328.

The *Rooker-Feldman* doctrine has no application here. Sasson is not seeking to have the bankruptcy court review the merits of the state court judgment; rather, he is attempting to prevent the bankruptcy court from giving effect to the state court judgment. Likewise, the creditor is not seeking modification of the state court judgment; it is attempting to save the judgment from bankruptcy discharge.

**[9]** In entering judgment, the bankruptcy court was exercising its exclusive statutory power to determine whether a debt is dischargeable in a bankruptcy case. *See* 11 U.S.C. §§ 523(a)(6), 727(a)(2). Actions seeking a determination of

nondischargeability are core bankruptcy proceedings, *see* 28 U.S.C. § 157(b)(2)(I), and are not subject to the *Rooker-Feldman* doctrine. *See Gruntz*, 202 F.3d at 1081-82. The *Rooker-Feldman* doctrine did not deprive the bankruptcy court of jurisdiction to enter the money judgment in this case.

D

Sasson also argues that the bankruptcy court lacked jurisdiction to enter a money judgment by operation of the full faith and credit statute, 28 U.S.C. § 1738, and the doctrines of res judicata and collateral estoppel. Unlike the *Rooker-Feldman* doctrine, these doctrines do not affect the jurisdiction of federal courts. *See, e.g., EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1430 (9th Cir. 1983) (en banc) ("[R]es judicata is an affirmative defense under the rules of civil procedure. Fed.R.Civ.P. 8(c). It is not a jurisdictional doctrine."). Moreover, central to the operation of the bankruptcy courts is the idea that the debtor's debts, including debts liquidated to judgments, may be modified and discharged. *See, e.g.*, 11 U.S.C. §§ 544, 547, 548, 549, 727, 1129, 1141, 1325, 1328.

**[10]** In short, "[f]inal judgments in state courts are not necessarily preclusive in United States bankruptcy courts." *Gruntz,* 202 F.3d at 1079. Thus, we must reject Sasson's argument that the doctrines of full faith and credit, *res judicata*, and collateral estoppel deprive the bankruptcy court of the jurisdiction to enter a money judgment in a discharge order involving liquidated debts.

This does not, of course, mean that the preclusion doctrines do not have any bearing on federal bankruptcy discharge proceedings. The Supreme Court has stated that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan*, 498 U.S. at 284 n.11. Further, we have held that "[t]he full faith and credit requirement of § 1738 compels a bankruptcy court in a

§ 523(a)(2)(A) nondischargeability proceeding to give collat-
eral estoppel effect to a prior state court judgment." *Gayden
v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 801 (9th Cir.
1995) (per curiam).[4]

In the bankruptcy discharge context, this means that "[i]f,
in the course of adjudicating a state-law question, a state court
should determine factual issues using standards identical to
those of [§ 523], then collateral estoppel, in the absence of
countervailing statutory policy, would bar relitigation of those
issues in the bankruptcy court." *Brown*, 442 U.S. at 139 n.10.
The classic example of the proper use of issue preclusion in
discharge proceeding is when the amount of the debt has been
determined by the state court and reduced to judgment. In that
event, if there are no new issues, the bankruptcy court should
ordinarily decline to allow the parties to relitigate the debt
amount and should give the state court judgment as to the
amount of preclusive effect. *Comer v. Comer (In re Comer)*,
723 F.2d 737, 740 (9th Cir. 1984). For the same reason, we
have held that if the issue of fraud had been litigated in state
court, the state court judgment would preclude relitigation of

---

[4]"In determining whether a party should be estopped from relitigating
an issue decided in a prior state court action, the bankruptcy court must
look to that state's law of collateral estoppel." *Diamond v. Kolcum (In re
Diamond)*, 285 F.3d 822, 826 (citing *Nourbakhsh*, 67 F.3d at 800). Thus,
we have held:

> Under California law, collateral estoppel only applies if certain
> threshold requirements are met: 'First, the issue sought to be pre-
> cluded from relitigation must be identical to that decided in a for-
> mer proceeding. Second, this issue must have been actually
> litigated in the former proceeding. Third, it must have been nec-
> essarily decided in the former proceeding. Fourth, the decision in
> the former proceeding must be final and on the merits. Finally,
> the party against whom preclusion is sought must be the same as,
> or in privity with, the party to the former proceeding.'

*Cal-Micro, Inc. v. Cantrell, (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir.
2003) (quoting *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245
(9th Cir. 2001)).

the same issue by the bankruptcy court in discharge proceedings. *Nourbaskhsh*, 67 F.3d at 801. Thus, the doctrines of preclusion play an important part in dischargeability proceedings by preventing the relitigation of factual and legal issues already determined by other courts.

[11] However, a preexisting judgment does not have preclusive effect on the bankruptcy court's determination of dischargeability. The Supreme Court firmly rejected such an idea in *Brown*, specifically holding that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt." *Brown*, 442 U.S. at 138-39. We explained this analytical distinction in *Comer*:

> *Res judicata* should not be applied to bar a claim by a party in bankruptcy proceedings, nor should a bankruptcy judge rely solely on state court judgments when determining the nature of a debt for purposes of dischargeability, if doing so would prohibit the bankruptcy court from exercising its exclusive jurisdiction to determine dischargeability.

*In re Comer*, 723 F.2d at 740.

As we explained in *Comer*, determination of the amount of the debt by the state court did not impact the dischargeability decision:

> In the present case, applying *res judicata* to bar the bankruptcy court from looking behind the default judgment to determine the actual amount of the obligation would not preclude the exercise of the bankruptcy court's exclusive jurisdiction to determine the nature of the subject debt for purposes of dischargeability.

*Id.* In *Comer*, because the state court judgment involved the "*extent* of [the debtor's] obligation . . . , not the *nature* of that

debt," it was not relevant to the bankruptcy court's exercise of its power to determine the dischargeability of a debt; therefore, we concluded that the bankruptcy court properly gave preclusive effect to the prior judgment. *Id.*

In this case, the parties were not relitigating the merits of the state court judgment in the nondischargeability proceeding. The adversary proceeding was based on Sasson's "willful and malicious" post-judgment conduct, not on the contractual breach that formed the basis of the state court judgment. Thus, the parties were litigating a different claim in the nondischargeability proceeding in bankruptcy, which was not precluded by the state court contract claim judgment. *Id.* Indeed, the creditor was not seeking to upend the state court judgment; rather, he simply was attempting to enforce it by defending against the discharge of the debt in bankruptcy. The bankruptcy court did not re-determine the amount of the state court debt; the court relied upon the state court determination. Thus, the various preclusion doctrines did not operate to prevent the bankruptcy court from entering a judgment of nondischargeability in this case. *See Diamond*, 285 F.3d at 829. The bankruptcy court's actions throughout the adversary proceedings were entirely consistent with the law of issue preclusion as we have applied it to bankruptcy discharge.

**[12]** The only remaining question, then, is whether the various doctrines of issue preclusion prevented the bankruptcy court from enforcing its dischargeability determination by including a money judgment in its resolution of the adversary proceeding. They clearly do not. As the Supreme Court has held, affording full faith and credit to a judgment does not require a court to "adopt the practices of [the jurisdiction that granted the judgment] regarding the time, manner, and mechanisms for enforcing judgments." *Baker ex rel. Thomas v. General Motors Corp.*, 522 U.S. 222, 235 (1998). As the Supreme Court explained, "[e]nforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the evenhanded control of

forum law." *Id.* (citing *McElmoyle ex rel. Bailey v. Coyen*, 13 Pet. 312, 325, 10 L.Ed. 177 (1839) (holding that judgment may be enforced only as "laws [of enforcing forum] may permit") and Restatement (Second) of Conflict of Laws § 99 (1969) ("The local law of the forum determines the methods by which a judgment of another state is enforced.")).

**[13]** In sum, none of the doctrines of issue preclusion dictate how a bankruptcy court may choose to enforce its determination of nondischargeability. That is a question reserved to the bankruptcy courts in the exercise of their broad equitable powers in bankruptcy. In so doing, as we have discussed, bankruptcy courts are authorized by statute to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 28 U.S.C. § 105. In addition, the bankruptcy court may use its inherent equitable power to fashion relief, so long as the remedy is consistent with the objectives of the Bankruptcy Code. *In re Saxman,* 325 F.3d at 1174. Thus, as a matter of law, a prior judgment does not preclude a bankruptcy court from exercising its power to determine how best to enforce its own dischargeability order.

**[14]** The bankruptcy court here, therefore, had the authority to enter a money judgment in conjunction with its nondischargeability order. "It does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under unusual circumstances such as here exist." *Hunt*, 292 U.S. at 241. The existence of a prior judgment may introduce some prudential concerns, such as comity, that a bankruptcy court should take into consideration in fashioning relief. *See Smith v. Lachter (In re Smith)*, 242 B.R. 694 (B.A.P. 9th Cir. 1999) (noting that the filing of a new money judgment is not necessary when there is an existing effective state court judgment); *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)*, 237 B.R. 160 (B.A.P. 9th Cir. 1999) (discussing the potential confusion and

complication caused by the entry of multiple judgments).[5] Although important considerations, these prudential concerns do not affect the jurisdiction and the power of the bankruptcy court to enter a new money judgment as part of declaring a debt nondischargeable.[6] Rather, these prudential issues are best committed to the judgment of the bankruptcy court, subject to review for abuse of discretion. *In re Myrvang*, 232 F.3d at 1121. In examining prudential considerations, we must also remember that "[t]he Supreme Court found that the overriding purpose of § 523 is to protect victims of fraud." *Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 222-23 (1998)). Thus, a bankruptcy court does not act outside the purposes of the Bankruptcy Code by providing victims of fraud an additional means of enforcing a nondischargeability judgment in an appropriate case.

Applying these principles to the case at hand, we conclude that the bankruptcy court acted well within its discretion in entering the new money judgment. Several circumstances rendered the bankruptcy court's entry of a new money judgment necessary and appropriate. The creditor obtained a state court judgment, which proved uncollectible at the time. When the creditor commenced further collection proceedings, the debtor

---

[5]We interpret *Smith* and *Gertsch* as involving prudential considerations. To the extent that these cases may be construed as holding that bankruptcy courts have no jurisdiction or authority to enter a money judgment on a liquidated claim, we must respectfully disagree. We also disagree with the approach taken by the Fourth Circuit in *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 257 (4th Cir. 2001). In our opinion, *Heckert* did not give sufficient consideration and deference to bankruptcy court's broad equitable powers to fashion relief.

[6]Many of the prudential considerations involved in the entry of multiple judgments can be addressed in the original state forum. For example, in California, the rule as to multiple judgments is that, if a party receives multiple judgments on a single claim, that party can have just one satisfaction. *See Textron Financial Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1078 (Cal. Ct. App. 2004); *McCall v. Four Star Music Co.*, 51 Cal. App. 4th 1394, 1398 (Cal. Ct. App. 1996).

filed bankruptcy. Based on the debtor's post-state judgment behavior, the bankruptcy court concluded that the debt was nondischargeable because the debtor had engaged in fraud. The court entered a money judgment as part of the judgment of nondischargeability. The debtor did not object, but waited until the creditor had allowed the state court judgment to lapse in favor of the discharge judgment. When the discharge judgment was renewed, the debtor then sought to prevent the bankruptcy court from issuing an enforcement order that would give effect to the prior state judgment, arguing that the lapsed state court judgment precluded it. However, as the BAP found, the debtor had engaged in "wilful and malicious behavior" in rendering the initial state court judgment uncollectible. The debtor in this case is clearly attempting to manipulate both the federal and state court systems to avoid paying the debt, which the bankruptcy court has found nondischargeable. Given the history of the case, the bankruptcy court's action in entering a new money judgment and renewing the judgment was entirely proper.

**[15]** Sasson would turn the law of preclusion on its head by having us hold that the existence of a lapsed underlying state court judgment precludes enforcement of that judgment in federal court. He would have us hold that we can only uphold a creditor's right to full faith and credit of a state court judgment by denying the creditor the right to enforce the judgment. In this context, the doctrines of full faith and credit, collateral estoppel, and res judicata do not apply to prevent a bankruptcy court from entering a money judgment when ruling on the dischargeability of the underlying debt in the exercise of its equitable power.

## III

**[16]** For all of these reasons, we conclude that the court did not err in declining to award relief pursuant to Rule 60(b)(4). Under Federal Rule of Civil Procedure 60(b), a court may relieve a party from judgment for the following reasons: (1)

mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or other misconduct; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) any other reason justifying relief from operation of judgment. Sasson contends that he is entitled to relief because the judgment entered by the bankruptcy court was void. A " 'judgment is not void merely because it is erroneous.' " *Ministry of Def. & Support for the Armed Forces v. Cubic Def. Sys.*, 385 F.3d 1206, 1225 (9th Cir. 2004) (quoting *United States v. Holtzman*, 762 F.2d 720, 724 (9th Cir. 1985)), *petition for cert. filed*, 73 U.S.L.W. 3498 (Feb. 11, 2005). We have consistently held that a "final judgment is 'void' for purposes of Rule 60(b)(4) *only if* the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999) (emphasis added); *Cubic Def. Sys.*, 385 F.3d at 1226 ("A judgment is void only if the issuing court lacked subject-matter jurisdiction over the action or if the judgment was otherwise entered in violation of due process.").

**[17]** Given that the bankruptcy court acted well within its jurisdiction and authority in entering the money judgment in the first instance, the judgment was not void. The court was entirely correct in declining to grant relief under Rule 60(b).

**AFFIRMED.**