**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1522
_____

SHARON BEN-HAIM; SOL HAVIVI;
GAMLIEL ELMALEM,
                                        Appellants

v.

YAAKOV NEEMAN; MOSHE KACHLON; EDNA
ARBEL; SIMONA SHTINMETZ; BATYA ARTMAN;
NIVA MILNER; DANIEL EDRI; KONRAD ADENAUER
STIFTUNG; INTERNATIONAL FELLOWSHIP OF
CHRISTIANS AND JEWS; NEW ISRAEL FUND
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 12-cv-00351)
District Judge: Honorable Jose L. Linares
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2013

Before: AMBRO, SHWARTZ and SCIRICA, Circuit Judges

(Opinion filed: November 4, 2013)
_____

OPINION
_____

PER CURIAM

    Appellants Sharon Ben-Haim, Sol Havivi, and Gamliel Elmalem appeal the

District Court's order dismissing their amended complaint. For the following reasons, we

will affirm.

Ben-Haim, Havivi, and Elmalem are fathers who are dissatisfied with the resolution of their marital and child custody cases in the courts of Israel. They allege that Israel's family law system discriminates unfairly against fathers in child custody and support disputes. On January 17, 2012, they filed suit in the United States District Court for the District of New Jersey against high-ranking Israeli officials, including a current Justice of Israel's Supreme Court, two former cabinet-level Ministers, and a current judge of the Haifa Rabbinical District Court. They also sued three not-for-profit, charitable entities, contending that they provide funds, and lobby, for policies that promote discrimination against fathers in the Israeli courts.

Ben-Haim is a New Jersey resident alien who alleged that his child was kidnapped from the United States to Israel by the child's mother. Ben-Haim sought relief in Israel pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, but, during the pendency of his lawsuit in Israel, his efforts for interim access to his child allegedly were thwarted by the defendants. He claims that they failed to take action to abolish institutionalized policies elevating the rights of mothers over the rights of fathers. Ben-Haim's child abduction case ultimately was resolved in Israel's Supreme Court. Elmalem is a United States citizen, who currently resides in Israel. He alleged that his domestic violence arrest in Israel, his child support payments, and his supervised visitation were unlawful. Havivi also is a United States citizen, currently residing in Israel. He alleged that social workers have "abused" and "tortured" him by subjecting his children to psychiatric treatment and medications intended to teach them that they do not need him in their lives.

Count 1 of the amended complaint sought money damages under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, for recklessly disregarding torture and crimes against humanity in violation of international law. Count 2 sought damages for recklessly disregarding torture under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note. Count 3 sought money damages for reckless disregard for human and parental rights under the ATS. Count 4 appeared to be a common law claim for emotional distress, and Counts 5, 6, and 7 sought money damages against the non-profit, charitable organizations for financing radical feminism, allegedly in violation of the ATS. The defendants moved to dismiss the amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

In an order entered on January 24, 2013, the District Court dismissed all claims against all defendants for lack of subject matter jurisdiction and for failure to state a claim. Among other things, the court concluded that the amended complaint alleged no cognizable ATS claims and that the plaintiffs had not alleged that any of the defendants tortured them within the meaning of the TVPA. Although the District Court held that the specific claims under the ATS could not proceed, the court noted in the margin that the United States Supreme Court had recently heard oral argument in Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659 (2013), concerning whether the ATS allows courts to recognize a cause of action for violations of the law of nations occurring within the territory of another nation. The District Court reasoned that Kiobel, depending on how it was decided, could provide yet another basis for dismissing the ATS claims with prejudice for lack of subject matter jurisdiction.

Ben-Haim, Elmalem, and Havivi appeal. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal of a complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 246 (3d Cir. 2010) (Rule 12(b)(6)); United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (Rule 12(b)(1)). Under Rule 12(b)(1), the District Court must grant a motion to dismiss if subject matter jurisdiction is lacking. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

We will affirm. The ATS provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The ATS is a jurisdictional statute that provides no causes of action, but permits federal courts to recognize private claims "defined by the law of nations and recognized at common law." Sosa v. Alvarez-Machain, 542 U.S. 692, 712 (2004). As a general matter, subject matter jurisdiction under the ATS is very limited. See id. A claim is not recognized unless it establishes a violation of a "specific, universal, and obligatory" norm of international law, see id. at 732 (quoting In re Estate of Marcos Human Rights Litigation, 25 F.3d 1467, 1475 (9th Cir. 1994)).

Although we very much doubt that the allegations in the amended complaint concerning Israel's family law system are actionable under the ATS (for example, it was alleged that Israeli family courts elevate the rights of mothers over the rights of fathers in

4

a way that amounts to "crimes against humanity"),[1] we need not reach the issue because, in Kiobel, 133 S. Ct. 1659 (2013), the Supreme Court held that the ATS does not apply when all of the relevant conduct took place outside the United States. See id. at 1669. In Kiobel, Nigerian nationals sued Dutch, British, and Nigerian corporations under the ATS, alleging that the corporations aided and abetted the Nigerian Government in committing violations of the law of nations – extrajudicial killings, crimes against humanity, torture, arbitrary arrest and detention, forced exile – in Nigeria. Relying on the statutory canon against extraterritorial application of federal statutes, the Court held that the presumption against extraterritoriality applied to claims brought under the ATS and that nothing in the statute's text, history, or purposes rebutted that presumption.[2] Here, the conduct that formed the basis of the ATS claims took place in Israel, and thus subject matter jurisdiction over Counts 1, 3, and 5-7 of the amended complaint is lacking in the federal courts.

With respect to the claims under the TVPA, dismissal under Rule 12(b)(6) is proper where the amended complaint fails to state a claim upon which relief may be granted, such as where the plaintiffs are unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant

---

[1] The appellee Israeli officials have represented in their brief that, in fact, Israel's child custody laws and social welfare policies are based on "the best interests of the child," the standard applied in the United States. See Appellee's Brief at 18.

[2] The presumption against extraterritorial application provides that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869, 2878 (2010). The presumption "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." E.E.O.C. v. Arabian American Oil Co., 499 U.S. 244, 248 (1991).

has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Conclusory allegations are insufficient to survive a motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Although the TVPA explicitly establishes the liability of an individual who subjects another to torture, 28 U.S.C. § 1350 note, § 2(a), the District Court correctly determined that the TVPA claims here failed to state a claim for relief.

Torture under the TVPA is defined as:

> (1) [A]ny act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

Id. at § 3(b)(1). Torture under the TVPA refers to "extreme, deliberate, and unusually cruel practices . . . ." See Simpson v. Socialist People's Libyan Arab Jamahiriya, 326 F.3d 230, 234 (D.C. Cir. 2003) (quoting Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 92 (D.C. Cir 2002)) (listing as examples of torture "sustained systematic beating, application of electric currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain").

The claims alleged in the amended complaint here fail for numerous reasons but, among those reasons the District Court correctly held that the amended complaint contains no allegations of extreme, deliberate, or unusually cruel practices. There are in fact no allegations of physical harm. Nor were there any allegations of severe mental harm. Severe mental pain or suffering is defined by the TVPA as

6

. . . prolonged mental harm caused by or resulting from—
(A) the intentional infliction or threatened infliction of severe physical pain or suffering;
(B) the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
(C) the threat of imminent death; or
(D) the threat that another individual will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

28 U.S.C. § 1350 note, § 3(b)(2)(A)-(D). Nothing of the sort was alleged in the amended complaint, and, although Havivi claimed that his children were subjected to forcible psychiatric treatment and medication, this allegation, even if true, does not support the plausible inference that the defendants tortured *him* with the threat that his children would be subjected to psychiatric treatment and medications. Accordingly, because the amended complaint failed to allege any facts from which the District Court could plausibly have inferred that the appellants were subjected to severe physical or mental pain, Count 2 was properly dismissed for failure to state a claim upon which relief may be granted.[3]

For the foregoing reasons, we will affirm the order of the District Court dismissing the amended complaint. Appellant's motion to add evidence to the appeal is denied.

---

[3] The District Court also properly declined to exercise jurisdiction on the basis of diversity of citizenship over Count 4, see 28 U.S.C. § 1332(a). See also Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 183-84 (3d Cir. 2008) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must be both a citizen of the United States and be domiciled within the State." (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989))).